UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDERS, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 12-CV-818 ) |
| DANIEL WERFEL, ACTING COMMISSIONER OF THE INTERNAL REVENUE SERVICE, | ) ) ) ) ) |
| Defendant. | ) |

## DEFENDANT'S MOTION TO CERTIFY THIS MATTER FOR INTERLOCUTORY APPEAL

Pursuant to 28 C.F.R. § 0.20(b), the Solicitor General determines "whether, and to what extent, appeals will be taken by the Government to all appellate courts." On November 29, 2013, the Solicitor General authorized the United States to take an appeal of this Court's order denying the defendant's motion to dismiss. Pursuant to that authorization, the defendant now respectfully requests that this Court certify for appellate review its order denying the defendant's motion to dismiss ("the Court's order"). (Doc. 17.)

The Court's order answered the threshold questions whether FFRF has standing to sue and whether sovereign immunity is waived in this case by the Administrative Procedure Act. As required by 28 U.S.C. § 1292(b), resolution of these issues undeniably presents "a controlling question of law as to which there is substantial ground for difference of opinion" and appellate resolution of these questions now will "materially advance the ultimate termination of the litigation." *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 675 (7th Cir. 2000) (quoting 28 U.S.C. § 1292(b)). The standard under 28 U.S.C. § 1292(b) is thus amply satisfied in this case, and the Court should certify its order for immediate appellate review.

The Court's order is particularly well-suited for immediate appellate review for a number of other reasons as well.  For starters, a permissive appeal at this juncture would likely "head off protracted, costly litigation." *Id.* at 677.  Discovery in this case, which involves well-publicized – though entirely mistaken – allegations that the IRS has a discriminatory policy of not enforcing the political activity restrictions set forth at 26 U.S.C. § 501(c)(3) against churches, is likely to be contentious.  The government will be faced with the unique prospect of attempting to prove a negative, *i.e.*, that the IRS does not, in fact, discriminate against churches with respect to enforcement of political activity restrictions.  The government will be required to prove this negative while also preventing disclosure of confidential tax return information submitted to the IRS by churches and other religious organizations.  *See* 26 U.S.C. § 6103.  Unlike the present case, the risk of a prohibited disclosure is generally not present in tax controversy litigation where the plaintiff is a taxpayer who seeks to vindicate his or her own rights.  Indeed, such suits do not require inquiry into the manner in which the IRS treats **other** taxpayers who are not before the court.

Plaintiff may also seek discovery regarding delicate policy judgments and enforcement decisions, requests the IRS will likely be required to (and entitled to) resist.  *See King v. IRS*, 684 F.2d 517, 519 (7th Cir. 1982) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (the deliberative process privilege exempts from disclosure "all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be"). Rather than proceeding with discovery, which could prove costly and time-consuming, the Court should certify its order for immediate review.

Moreover, both the standing issue and the waiver of sovereign immunity issue in this case have precedential value for other taxpayer suits.  This case raises the issue of whether a

plaintiff may challenge a governmental action or policy even if the challenged action or policy has never been applied to (nor denied to) that plaintiff. Under plaintiff's theory of this case, a plaintiff need not experience any interaction with government in order to establish standing. For that reason, suits alleging the same or similar basis for constitutional standing and a waiver of sovereign immunity are potentially without limit. Therefore, the government, the Court, and the plaintiff all have a significant interest in the resolution of these overlapping jurisdictional issues without litigating each case to its conclusion. A ruling from the appellate court in this case could potentially resolve these questions in a definitive manner that would provide persuasive or controlling authority for other cases implicating these jurisdictional issues.

Put simply, the case at bar presents those unique factors that "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996).

## ARGUMENT

The standard under 28 U.S.C. § 1292(b) has been articulated as follows: "there must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up the litigation." *Ahrenholz*, 219 F.3d at 675. All of these criteria must be satisfied before a district court may certify its order for immediate appeal. *Id.* at 676. As set forth below, each of the criteria is amply satisfied in this case, and the Court should certify its order denying the defendant's motion to dismiss for immediate appellate review.

### I. Standing To Sue And Waiver Of Sovereign Immunity Are Controlling Questions Of Law.

A "question of law" as contemplated by 28 U.S.C. § 1292(b), "has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz*, 219 F.3d at 676. The standard refers to an "abstract legal issue," in other words, a

3

"'pure' question of law rather than merely to an issue that might be free from a factual contest." *Id.* at 677. "A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*, 86 F.3d 656, 659 (7th Cir. 1996).

Here, whether FFRF has standing to challenge the tax treatment of third parties or has established a waiver of sovereign immunity are purely matters of law, and no facts are in dispute that bear upon those questions. Accordingly, there is no factual record for the reviewing court to consider. If the question is certified – as it should be – the appellate court will review the order denying the defendant's motion to dismiss *de novo* by applying the allegations in the complaint to the applicable law. *See In re Text Messaging*, 630 F.3d at 625 (granting permission for interlocutory appeal in part because "in this case we have neither factfindings nor the application of a legal standard to factfindings; the question presented by the appeal is the sufficiency of the allegations of a complaint; and, most important, that question requires the interpretation, and not merely the application, of a legal standard – that of *Twombly*").

It is likewise clear that the resolution of these questions would affect the further course of the litigation. If plaintiff is found to not have standing, or cannot establish a waiver of sovereign immunity, the case must be dismissed in its entirety. If plaintiff does have standing, the case will proceed. Therefore, the issue is "controlling." *See Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 2012 U.S. Dist. LEXIS 68191, at *6 (E.D. Wis. May 16, 2012) (certifying order for interlocutory appeal for ruling that case met federal question jurisdiction requirements).

Indeed, if the Court is without subject-matter jurisdiction over this case, then any pronouncement on any issue naturally violates Article III limitations. *See Already, LLC v. Nike, Inc.*, --- U.S. ---, 133 S.Ct. 721, 726-27 (2013); *In re Sealed Case*, 131 F.3d 208, 210 (D.C. Cir.

1997). This case presents "a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record," and, as a result, "the court should be enabled to do so without having to wait till the end of the case." *Ahrenholz*, 219 F.3d at 676-77.

### II. Resolution Of The Controlling Issues Of Law In Favor Of The Defendant Is Likely To Speed The Resolution Of This Case.

The resolution of these issues, if resolved in favor of the defendant, would surely speed the resolution of this litigation. As one district court put it: "Why wait until final resolution of the case in federal court to learn that this court had no jurisdiction to hear the case in the first place?" *Hartland Lakeside*, 2012 U.S. Dist. LEXIS 68191, at *6. There, the court certified its order denying plaintiffs' motion for remand to state court because the district court had federal question jurisdiction to hear the case. *Id.* at *2-3. The court in *Hartland Lakeside* observed that the balance of efficiencies favored granting the petition to file an interlocutory appeal because "[i]f the Seventh Circuit finds that this court lacks subject matter jurisdiction, then litigation in federal court ends." *Id.* at *11. If, however, "the Court of Appeals affirms this court's decision, then the parties have been delayed for a short time period and one potentially appealable issue will have been disposed of." *Id.* Thus, the overall effect of allowing the petition for interlocutory appeal would "ultimately speed up the litigation." *Id.*

That analysis applies with equal force here. If the reviewing court were to determine that federal subject matter jurisdiction is lacking because plaintiff lacks standing to sue, or that plaintiff cannot establish an effective waiver of sovereign immunity, the case will be over. Thus, if the Court's order is ultimately reversed, an immediate appeal would conserve judicial resources and the parties' time and expenses. It would be far better for all concerned, including FFRF, to have these threshold issues resolved now, as opposed to sometime in the distant future, after considerable time and expense. *See, e.g.*, *Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720,

5

728 (S. D. Tex. 2002) ("It would pain the Court to see both attorneys [and parties] proceed to judgment after considerable expense and delay, only to discover that the judgment must be overturned on appeal because the federal judiciary lacks subject matter jurisdiction."). Rather than setting the parties on a path that may require them to incur considerable cost and to expend considerable time only to have an appellate court later decide that the matter should have been terminated at the outset, the government respectfully submits that the better course of action is an interlocutory appeal.

### III. The Court's Order Is "Contestable" Under Applicable Appellate Precedent.

Finally, the controlling question of law must be one "as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). In other words, the controlling question of law must be "contestable." *Ahrenholz*, 219 F.3d at 675. The present case clearly presents a contestable issue respecting whether FFRF has standing to sue and whether the United States has waived its sovereign immunity.

#### 1. *Constitutional Standing*

For example, sufficient authority supports the government's position that plaintiff's complaint is too generalized and abstract, and merely shared in common with other citizens. Indeed, the Court's order stands in contrast to a large body of case law rejecting claims of standing in similar contexts. *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 753-61 (1984) (plaintiffs lacked standing to sue the Treasury and the IRS to require them to administer § 501(c)(3) in accordance with plaintiffs' assertions regarding what that law requires); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37-45 (1976) (rejecting claim of standing to challenge third parties' tax exemptions under § 501(c)(3) for lack of traceability to the challenged government policy); *In re United States Catholic Conference*, 885 F.2d 1020, 1022-26 (2d Cir. 1989) (denying standing to

plaintiffs who sought to have the Treasury revoke the tax exemption of the Catholic Church for alleged electioneering in opposition to abortion rights; although plaintiffs asserted that they were treated less favorably than the Catholic Church, they did "not allege that the IRS has penalized them for violating the Code; in fact, they assert that they have not violated § 501(c)(3) by electioneering and do not intend to. Rather, they want the government to enforce the strictures of § 501(c)(3) against the Catholic Church."). As explained in the defendant's briefing supporting the motion to dismiss, a plaintiff is not entitled to invoke the jurisdiction of a federal court to litigate the claim that the government is failing to enforce the laws against third parties. *E.g.*, *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 483 (1982); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 217 (1974).

The government also has a reasonable position that FFRF cannot identify an injury that is fairly traceable to any injurious government action (or inaction). *See Defenders of Wildlife*, 504 U.S. at 568. Plaintiff's theory of standing relies on the assumption that they are receiving "treatment" or having been "treated" a certain way, even though the complaint contains no factual or concrete allegations that FFRF has received any particularized treatment whatsoever. FFRF's status as a tax-exempt organization cannot be traced to whether the IRS has any policy of non-enforcement of § 501(c)(3), given that FFRF has alleged that it abides by the political activity prohibition of § 501(c)(3). Nor could FFRF's (purported) injury be linked to whether the IRS has designated an "appropriate high-level Treasury official" to initiate church tax inquiries under § 7611. FFRF is not a church and § 7611 thus does not apply.

The government's position that the complaint does not identify an injury that can be remedied by a favorable decision by this Court is also supported by ample authority. Granting

the relief FFRF seeks would require the Court to supplant its views with those of the IRS by setting the enforcement priorities for the agency to apply. But the "Judicial Branch does not instruct the Executive Branch how to make its own decisions. The judicial task is to ensure that executive decisions conform to law, and this decision is lawful." *Orum v. Comm'r*, 412 F.3d 819, 821 (7th Cir. 2005) (citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004)); *see also Railway Labor Executives Asso. v. Dole*, 760 F.2d 1021, 1023-1024 (9th Cir. 1985) ("it remains virtually impossible for a district court to write the qualitative standards for, and to supervise the enforcement efforts of, the agency charged" with enforcement).

Notably, in *Heckler v. Mathews*, 465 U.S. 728 (1984), upon which this Court relied in denying the government's motion to dismiss, the Supreme Court was careful to distinguish *Eastern Kentucky*, *supra*. In *Eastern Kentucky*, the Court acknowledged that the plaintiffs had alleged a cognizable injury – the loss of other-than-emergency medical care by tax-exempt hospitals. But their standing failed because their injury could not be traced to the actions of the IRS: it was "purely speculative" whether the withdrawal of care was made due to the availability of the tax exemption or, instead, by "decisions made by the hospitals without regard to the tax limitations." 426 U.S. at 42-43. The Court in *Mathews* emphasized that there "can be no doubt about the direct causal relationship between the government's alleged deprivation of appellee's right to equal protection and the personal injury appellee has suffered— denial of Social Security benefits solely on the basis of his gender." 465 U.S. at 740. The Court also stressed that "because appellee personally has been denied benefits that similarly situated women receive, his is not a generalized claim of the right possessed by every citizen, to require that the Government be administered according to law." *Id.* (citations and internal quotations omitted).

In addition, in *Allen v. Wright*, 468 U.S. at 754, the Supreme Court held that the plaintiffs' claim to have the Government act in accordance with law, shared generally with citizens in common, was too abstract and diffuse to support standing. Nor was plaintiffs' claim even cognizable to the extent it was viewed as a "stigmatizing injury." Although the Court observed, citing *Mathews*, that "[t]here can be no doubt that this sort of noneconomic injury is one of the most serious consequences of discriminatory government action and is sufficient in some circumstances to support standing." *Id.* at 755 (emphasis added). The Court added "Our cases make clear, however, that such injury accords a basis for standing only to "those persons who are personally denied equal treatment" by the challenged discriminatory conduct." *Id*. (citing *Mathews*, 465 U.S. at 739-740).

In short, the Supreme Court was careful to distinguish *Eastern Kentucky* in *Mathews* and was careful to distinguish *Mathews* in *Allen v. Wright*. The claim FFRF is advancing is a generalized grievance or, at best, a stigmatic injury, that is not judicially cognizable. Short of FFRF's risking its own tax exemption by electioneering in violation of the ban, it will not have one. Nor is any electioneering fairly traceable to the supposed policy of nonenforcement against churches, because it calls for speculation whether the existence and amount of electioneering by churches is dependent upon tax exemptions. And finally, any such injury at the hands of the IRS is not redressable, because the churches' rights to tax exemptions can only be conclusively litigated in declaratory judgment suits or refund actions to which they are parties.

      2. *Prudential Standing*

The government also has a reasonable argument that prudential concerns weigh in favor of dismissal of FFRF's complaint. Prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized

9

grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen*, 468 U.S. at 751 (citing *Valley Forge*, 454 U.S. at 474-75); *see also Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 12 (2004).  Indeed, in *Apache Bend Apartments, Inc. v. United States*, 987 F.2d 1174 (5th Cir. 1993) (*en banc*), the Fifth Circuit dismissed a third-party suit challenging transition rules in the Tax Reform Act of 1986 based on prudential concerns "directed to the plaintiffs' alleged injury of unequal treatment."  *Id*. at 1178.  The Fifth Circuit was careful to distinguish *Mathews*, stressing that the Supreme Court had noted that the plaintiff there personally was denied equal treatment.  *Id*.

Here, FFRF is not asserting or attempting to vindicate its own rights. Rather, FFRF is litigating the question whether the IRS systematically refuses to enforce political activity restrictions against churches and religious groups. Even if there were such a policy (and there is not), it would not even apply to FFRF – a non-religious organization. And to the extent that FFRF raises questions regarding the proper degree of enforcement by the IRS, those questions are more appropriately addressed in the representative branches of government. *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985).

### 3.  *Sovereign Immunity*

Finally, the government has respectable arguments that sovereign immunity is not waived under the Administrative Procedure Act.  In general, any person "adversely affected or aggrieved" by "agency action," *see* 5 U.S.C. § 702, including a "failure to act," is entitled to "judicial review thereof."  Judicial review under the APA is limited, however, absent a specific statute providing otherwise, to "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  While *Blagojevich v. Gates*, 519 F.3d 370, 371-72 (7th Cir. 2008)

held that "final" agency action is unnecessary where the complaint invokes the second sentence of 5 U.S.C. § 702 by making a bid for nonmonetary (*i.e.*, injunctive or declaratory) relief, the Supreme Court has concluded that "before any review at all may be had, a party must first clear the hurdle of § 701(a)," *Heckler v. Chaney*, 470 U.S. 821, 828 (1993). According to 5 U.S.C. § 701(a)(2), judicial review does not apply where "agency action is committed to agency discretion by law."

FFRF is challenging an alleged IRS decision not to enforce certain aspects of § 501(c)(3) against churches – yet the government has a reasonable argument that an agency's decision not to prosecute or enforce is generally committed to an agency's absolute discretion and is therefore presumptively unreviewable under the APA. *Heckler v. Chaney*, 470 U.S. at 831. As the Court explained, "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise," such as the fit with the agency's overall enforcement policies, the likelihood of success and the availability and optimal deployment of scarce resources. *Id.* at 831. The government has a reasonable argument that there is no basis for rebutting the presumption of unreviewability here, where Congress furnished no guidelines in the Internal Revenue Code for the IRS "to follow in exercising its enforcement powers." *Id.* at 833.

## CONCLUSION

For all of the above reasons, the defendant respectfully requests that this Court certify for appellate review its order denying the defendant's motion to dismiss. (Doc. 17.)

Dated: December 2, 2013  Respectfully submitted,

*/s/ Richard G. Rose*
RICHARD G. ROSE
District of Columbia Bar Number: 493454
U.S. Department of Justice, Tax Division

Post Office Box 7238
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-2032
Facsimile: (202) 514-6770
E-mail: richard.g.rose@usdoj.gov

*/s/ Richard Adam Schwartz*
RICHARD ADAM SCHWARTZ
California Bar Number: 267469
U.S. Department of Justice, Tax Division
Post Office Box 683
Washington, D.C. 20044
Telephone: (202) 307-6322
Fax: (202) 307-0054
E-mail: richard.a.schwartz@usdoj.gov

*Counsel for the Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing MOTION TO CERTIFY THIS MATTER FOR INTERLOCUTORY APPEAL to be served on the following counsel by electronic mail on December 2, 2013:

Richard L. Bolton,
Boardman and Clark, LLP
1 S. Pinckney St., Ste 410
Madison, Wisconsin 53703-4256
Telephone: 608-257-9521
Facsimile: 608-283-1709
rbolton@boardmanclark.com

*Counsel for Plaintiff*

                                       */s/ Richard A. Schwartz*
                                       RICHARD A. SCHWARTZ
                                       U.S. Department of Justice