# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

FREEDOM FROM RELIGION
FOUNDATION, INC.,

                    Plaintiff,

                                              Case No. 12 CV 0818

DANIEL WERFEL, ACTING
COMMISSIONER OF THE
INTERNAL REVENUE SERVICE,

                    Defendant.

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY THIS MATTER FOR INTERLOCUTORY APPEAL

## I.      The Government's Motion for Certification is Untimely.

The Government overlooks the requirement that a certification motion must be filed in the District Court within a reasonable time after the order sought to be appealed. *Ahrenholz v. Board of Trustees,* 219 F.3d 674, 675-76 (7th Cir. 2000). The Government's oversight is significant because the Motion for Certification has not been brought within a reasonable time of the court's Order.

The court issued the Order and Decision for which the Government seeks certification on August 19, 2013. The Court subsequently held a scheduling conference on September 26, 2013, at which time the Government indicated that it was considering making a request for permission to take an interlocutory appeal. The Government then decided not to request certification -- but on November 22, 2013, Judge Crabb granted Summary Judgment against the Government in another case involving the Internal Revenue Service. (*Freedom From Religion Foundation, Inc. v. Werfel*, 3:11-CV-00626-bbc).

1

Judge Crabb ruled against the Government, holding that a tax exemption provided exclusively to religious ministers violated the Establishment Clause.  (Docket No. 56.)  In that case, the Government had earlier raised the same standing and jurisdictional arguments as the Government raised in this case.   Judge Crabb rejected the Government's standing and jurisdictional arguments in a Decision and Order entered way back on August 29, 2012.  (Docket No. 30.)  The Government did not request certification from Judge Crabb and the case was then decided on the merits adversely to the Government on November 22, 2013.

Immediately after Judge Crabb's decision on November 22, 2013, the Government changed its mind with respect to an interlocutory appeal in the present case.  As a result, according to the Government's Brief, the Solicitor General authorized a request for certification the day after Thanksgiving, on November 29, 2013, and just a week after Judge Crabb's decision.   The following Monday, on December 2, 2013, the Government filed the pending Motion for Certification in this Court, nearly 3 1/2 months after the decision as to which the Government now seeks certification.

The Government's Motion for Certification provides no explanation or justification for the lengthy delay -- more than two months after the Government first mentioned to the court on September 26, 2013, that it was considering whether to seek certification for an interlocutory appeal.  The Government merely states in its Brief that the Solicitor General authorized the filing of this Motion for Certification on the day after Thanksgiving, November 29, 2013, but again without explanation or justification for the delay.  The Solicitor General, however, acted only after Judge Crabb's decision just a week earlier in the other case.

No decision has been discovered in which a delay as long as in this case was deemed reasonable.  For example, in *Richardson Electronics, Ltd. v. Panache Broadcasting*, 202 F.3d

957, 958 (7th Cir. 2000), the Court declared that a two month delay in seeking certification "was alone sufficient grounds for us to refuse our permission to appeal."  Other courts have similarly deemed motions seeking certification brought two months or less to be untimely.  In *In re: Yasmin and Yaz Liability Litigation,* 2012 U.S. Dist. LEXIS 25899 (S. Dist. IL 2002), for example, the court held that a two month delay was not reasonable.  Similarly, in *TAS Distributing Company, Inc. v. Cummins, Inc.,* 211 U.S. Dist. LEXIS 126349 (C. Dist. IL 2011), the court concluded that even a delay of 1 1/2 months would not constitute a reasonable time for requesting certification.  Likewise, in *Muniz v. Rexnord Corporation,* 2007 U.S. Dist. LEXIS 5483 (N. Dist. IL 2007), the Court ruled that a motion for certification filed thirty-nine days after the disputed order was not reasonable.

The court should deny the Motion for Certification in this case based on the Government's unreasonable delay.  The reasonable time requirement is a criterion that must be satisfied, as well as other criteria, and "unless all these criteria are satisfied, the District Court may not and should not certify its order to us for an immediate appeal under section 1292(b)." *Ahrenholz*, 219 F.3d at 676.  Certification is particularly inappropriate in the present case where the Government initially decided not to seek certification, but only subsequently got cold feet in light of Judge Crabb's decision in the housing allowance case.

## II.     The Court's Ruling is Not Subject to Substantial Ground for Difference of Opinion.

The Government argues unpersuasively that the court's decision on standing in this case is subject to a substantial difference of opinion.  This requirement, *i.e.,* contestability, also is a requirement for certification.  *Ahrenholz,* 219 F.3d at 675.  The Government, however, misapprehends the factual allegations of this case, and relies on patently distinguishable legal authority as a result.

3

The Plaintiff alleges that the Government has a practice and policy of not enforcing electioneering restrictions against churches and other religious organizations as a condition of tax-exempt status under § 501(c)(3) of the Internal Revenue Code.  Secular non-profit and tax-exempt organizations, like the Plaintiff, however, do not get the same preferential treatment. Plaintiff, therefore, complains in this matter that such discrimination among the class of tax-exempt non-profit organizations, solely on the basis of religious affiliation, violates the Establishment Clause.

The Government argues that secular tax-exempt organizations should have no standing to complain about a preference extended only to religious organizations.  According to the Government, secular organizations should defy the legal restriction on electioneering and risk losing their tax-exempt status - - and then appeal to the IRS.  By contrast, the Government argues that secular non-profits that comply with the law should not be allowed to object at all to the preference afforded to religious organizations.

The Government also argues with a degree of chutzpah that the IRS can discriminate in favor of religious organizations, solely on the basis of religious affiliation, with complete and totally unreviewable discretion.

A.      This Court's Standing Analysis Is Not Controversial.

The Government urges a crimped view of standing that is not supported by existing law. In *Arizona Christian School Tuition Organization v. Winn,* 131 S. Ct. 1436, 1440 (2011), the United States Supreme Court expressly recognized that plaintiffs have standing when they incur a burden or are not eligible for a benefit on account of religious criteria.  The Court, significantly, recognized that "those costs and benefits can result from alleged discrimination in

the Tax Code, such as when the availability of a tax exemption is conditioned on religious affiliation." *Id.*

The Supreme Court, in *Heckler v. Matthews,* 465 U.S. 728 (1984), also carefully considered the issue of standing in a case where the extension of benefits to a disfavored group was not even an available remedy. The only remedy at issue in *Heckler* was nullification of a statute that provided benefits exclusively to a favored group. The Supreme Court concluded in *Heckler* that "we have never suggested that the injuries caused by a constitutionally underinclusive scheme can be remedied only by extending the program's benefits to the excluded class." *Id.* at 738.

The Supreme Court further explained in *Heckler* that the right to equal treatment guaranteed by the Constitution is not coextensive with any substantive right to the benefits denied to the party being discriminated against. *Id.* The Court emphasized, instead, that the discrimination itself gives rise to standing.

The Plaintiff in the present case alleges discriminatory treatment specific to its own status as a non-profit tax-exempt organization that is subject to the restrictions of § 501(c)(3). The Plaintiff is similarly situated to churches and other religious organizations that are otherwise preferentially excluded from the restrictions of § 501(c)(3).

Courts have subsequently recognized *Heckler* for the proposition that such similarly situated taxpayers do have standing to challenge underinclusive policies by seeking nullification -- without being limited only to the potential remedy of an administrative appeal of final agency action. In *Finlator v. Powers,* 902 F.2d 1158, 1161 (4th Cir. 1990), for example, the Fourth Circuit Court of Appeals expressly rejected the argument that an underinclusive statute is only redressable by a claim for fraud. Similarly, in *Planned Parenthood of South Caroline*

*Incorporated v. Rose,* 361 F.3d 786, 791 (4th Cir. 2004), the Court reiterated that standing to challenge an underinclusive statute does not require exhaustion of administrative efforts undertaken to obtain the discriminatory benefit.

The Government continues to rely on cases that are wholly distinguishable from *Heckler*. In particular, the Government relies on *Allen v. Wright,* 468 U.S. 737 (1984), and *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26 (1976), but in these cases, the plaintiffs were not similarly situated to the preferentially advantaged class. In *Allen*, for example, the plaintiffs alleged that the Government's failure to enforce anti-discrimination requirements stigmatized them as minorities. The Supreme Court concluded that their claimed injury was too remote to confer standing - - but that case did not involve similarly situated schools complaining of discriminatory non-enforcement. Likewise, in *Simon*, the plaintiffs alleged that their access to medical treatment, as low-income patients, was adversely affected by certain government policies relating to hospitals. The Court concluded that the plaintiffs' claims to improved access to health care was speculative because the hospitals might very well continue their existing policies, regardless of the Government's action. Again, however, *Simon*, did not involve any claim by a similarly situated hospital of discriminatory enforcement.

By contrast, *Heckler* involved a plaintiff who claimed unequal treatment in regard to Social Security benefits based solely on his gender. As in the present case, therefore, *Heckler* involved a suit regarding underinclusive benefits brought by a plaintiff who was similarly situated to preferred beneficiaries, except for the consideration of legally proscribed factors. *Heckler,* 465 U.S. at 738.

In light of *Heckler*, and analogous decisions, the Government argues incorrectly that this court's decision is subject to a substantial difference of opinion. The law is clearly established

that taxpayers do have standing to challenge underinclusive policies when the taxpayers are otherwise similarly situated.  The Government, moreover, argues incorrectly that such a rule allows for standing by anyone who may disagree with the Government's policy and practice. The Government ignores the factual circumstance that this Plaintiff is a similarly situated taxpayer, *i.e.*, a non-profit tax-exempt organization.

**B.     The Government Is not Above the Constitution.**

The Government also argues audaciously that the IRS can implement and execute patently discriminatory policies without any review because choosing to discriminate is wholly discretionary.  According to the Government, if the IRS exercises its discretion to discriminate, then no constitutional challenge may be brought.  This remarkable argument, by the Government of the United States, is not supported by any known authority.

The Government relies in its Motion for Certification on the Supreme Court decision in *Heckler v. Chaney*, 470 U.S. 21 (1985).  That case, however, only considered the extent of judicial review authorized by the Administrative Procedure Act ("APA").  *Id.* at 823.  The Court's decision explicitly and narrowly addressed the construction of the APA's provisions for judicial review of agency actions.  *Id.* at 827-28.  Unlike *Heckler v. Chaney*, however, the present case does not involve a cause of action arising under the APA, and that is a point which the Government ignores.

The *Heckler v. Chaney* decision, moreover, is not a decision that the Supreme Court intended to prohibit non-statutory constitutional challenges.  The Court majority noted that "no colorable claim is made in this case that the agency's refusal to institute proceedings violated any constitutional rights of respondents."  *Id*. at 838.  Justice Brennan, in concurrence, further

emphasized that the Court's decision did not hold that non-enforcement decisions that allegedly violate constitutional rights are unreviewable. *Id.* at 839.

No decision has been found in which a court has held that agency action is wholly unreviewable for constitutional infirmity if the agency exercises discretionary authority. Such a proposition, moreover, would put the Executive Branch of the Government above and beyond the Constitution, which has not been the law, at least since the Supreme Court's decision in *Marbury*.

The Government, in the final analysis, unconvincingly argues the contestability of existing law. The Government, in fact, is really arguing for the adoption of legal propositions that do not constitute recognized law. Such arguments for a sea change in the law are not compelling, nor a proper basis for certification of an interlocutory appeal to the Court of Appeals.

## III.   The Government Has Failed to Establish That This Case is Exceptional.

The Government must also demonstrate that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475 (1978). Under this standard, a party seeking interlocutory review bears a heavy burden because only exceptional cases justify departure from the final judgment rule.

The present case is not exceptional. The Government argues that the case may involve disputed discovery, but in the context of litigation with the Federal Government, this case obviously involves very manageable discovery, albeit possibly discovery unwelcomed by the Government.

8

The Government's additional argument that a potential reversal on appeal would end this case also does not constitute an exceptional circumstance. The same argument can be made with regard to every case involving a motion to dismiss that is denied by a district court. That is not a basis for certification, nor is a case exceptional simply because one party believes that the District Court decided a matter incorrectly.

In fact, the issue that the Government urges for interlocutory appeal is not even a pure controlling issue of law. The existing rules of standing, as discussed, involve distinctions between similarly-situated taxpayers, such as in this case, and non-taxpayers, such as in *Allen v. Wright* and *Simon v. Easter Kentucky Welfare Rights Organization*. Issues of standing, therefore, are not subject to a "one size fits all" analysis. As a result, the arguments made by the Government in this case cannot be decided without reference to the fact that the Plaintiff herein is a similarly-situated non-profit tax-exempt organization. For that reason as well, the Government's Motion for Certification should be denied.

**IV.    Conclusion.**

For all of the above reasons, the Plaintiff respectfully requests that the Government's Motion for Certification of an Interlocutory Appeal be denied.

Dated this 12 day of December, 2013.              **BOARDMAN & CLARK LLP**

By:

        */s/ Richard L. Bolton*
        Richard L. Bolton,
        Wisconsin State Bar No. 1012552
        *rbolton@boardmanclark.com*
        Boardman and Clark, LLP
        1 S. Pinckney St., Ste 410
        Madison, Wisconsin 53703-4256
        Telephone: 608-257-9521
        Facsimile: 608-283-1709

<u>Notice of Electronic Filing and Service</u>

I hereby certify that on December 12, 2013, this document was filed electronically in accordance with the ECF procedures of the United States District Court, Western District of Wisconsin, under Rule 5(d)(1), Federal Rules of Civil Procedure.  All parties who are represented and have consented to service of electronically filed documents are served upon receipt of the NEF from the electronic filing system.

To the best of my knowledge, there are no parties in this case that require service by means other than electronic service using the Court's NEF.   The original document on file with the filing party contains valid original signatures.

F:\DOCS\WD\26318\25\A1785976.DOCX