UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

**FREEDOM FROM RELIGION FOUNDATION, INC.,**
       **Plaintiff,**

     **v.**                                       **Case No. 12-C-0818**

**JOHN KOSKINEN, Commissioner**
**of the Internal Revenue Service,**
       **Defendant.**

---

**DECISION AND ORDER**

Section 501(c)(3) of the Internal Revenue Code exempts entities that are organized and operated exclusively for religious, charitable, scientific, or other specified purposes from having to pay federal income taxes. A condition of this exemption is that the entity not participate or intervene in any political campaign on behalf of, or in opposition to, any candidate for public office. 26 U.S.C. § 501(c)(3). The plaintiff in this case, the Freedom from Religion Foundation, alleges that the Internal Revenue Service has a policy of not enforcing this condition to tax-exempt status against churches and religious organizations. At the same time, the Foundation alleges, the IRS enforces the condition against other tax-exempt organizations. The Foundation, which is itself a § 501(c)(3) organization, contends that the IRS's policy of disparate treatment violates its rights under both the Establishment Clause and the equal-protection component of the Due Process Clause of the Fifth Amendment. For relief, the Foundation seeks a declaratory judgment stating that the IRS's alleged policy of providing preferential treatment to churches and religious organizations is unlawful, as well as an injunction requiring the IRS to abandon that policy. The IRS

denies that it has a policy of not enforcing § 501(c)(3)'s electioneering restrictions against churches and religious organizations.

Before me now is a motion to intervene filed by Father Patrick Malone and the Holy Cross Anglican Church. The church is a tax-exempt organization that does not obey the electioneering restrictions of § 501(c)(3). See Decl. of Father Patrick Malone ¶¶ 4, 29. In particular, Father Malone, the vicar of the church, regularly makes statements during worship services and church gatherings in which he urges members of the congregation to vote for or against certain candidates for public office. Id. ¶¶ 11–12, 20. So far, however, the IRS has not taken any action in response to the church's activities. Id. ¶ 29. But the church and Father Malone are concerned that if the Foundation obtains the relief it seeks in this lawsuit, then the IRS will be required to "punish" them for having engaged in political activity. Id. ¶¶ 25–26. Thus, the church and Father Malone claim that they have an interest in this suit and seek to intervene as defendants. They seek intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permissive intervention under Rule 24(b)(1)(B). If allowed to intervene, the movants would argue that they have a legal right to participate in political campaigns without forfeiting their tax-exempt status. The movants contend that their position is supported by the Religious Freedom Restoration Act ("RFRA") and the Free Speech, Free Exercise, and Establishment Clauses of the First Amendment.

For a movant to have a right to intervene under Rule 24(a)(2), the movant must claim "an interest relating to the property or transaction that is the subject of the action" that might be "impair[ed] or imped[ed]" by the disposition of that action. Fed. R. Civ. P. 24(a)(2). In the present case, the interest that the movants seek to protect is their interest

2

in having Father Malone preach to the church about whom to vote for without jeopardizing the church's tax-exempt status. They believe that if the Foundation obtains an injunction requiring the IRS to enforce § 501(c)(3)'s electioneering restrictions against churches and religious organizations, the IRS will be required to initiate proceedings to possibly revoke the church's tax-exempt status on the ground that Father Malone has and will continue to preach about candidates for political office. However, the threat to this interest is at least one step removed from this lawsuit. If the Foundation prevails, it will not obtain an order requiring the IRS to immediately investigate whether Father Malone and Holy Cross have violated § 501(c)(3)'s electioneering restrictions. Rather, because the IRS does not have infinite resources and must exercise discretion in choosing which tax-exempt entities to investigate, it is uncertain whether the IRS, if compelled to enforce the electioneering restrictions against churches, would ever take any action against Father Malone or Holy Cross.

Still, in litigating this lawsuit, the Foundation will advance legal arguments that if accepted would impair or impede the movants' interests. The Foundation intends to argue that any policy of non-enforcement of § 501(c)(3)'s electioneering restrictions against churches and religious organizations violates the Establishment Clause. The movants contend that the IRS's _enforcing_ those restrictions against churches and religious organizations would violate the Establishment Clause. So if the Foundation prevails, a cloud would be cast over the movants' argument that the Establishment Clause prevents the IRS from enforcing the electioneering restrictions against churches and religious organizations. The movants should be permitted to intervene in this case for the purpose of protecting their argument.

It is true that even if the Foundation prevails, the movants will still have a chance to litigate the issue of whether the Establishment Clause and other laws grant them a right to both preach about candidates for office and maintain their tax-exempt status. Because the movants, if denied intervention, would not be bound by any of the orders entered in this case or be precluded from advancing contrary legal arguments in the future, they will be free to assert the Establishment Clause as a defense in any IRS action to revoke their tax-exempt status. "But the possibility that the would-be intervenor if refused intervention might have an opportunity in the future to litigate his claim has been held not to be an automatic bar to intervention." City of Chicago v. Fed. Emergency Mgmt. Agency, 660 F.3d 980, 985–86 (7th Cir. 2011). Rather, "[c]ases allow intervention as a matter of right when an original party does not advance a ground that if upheld by the court would confer a tangible benefit on an intervenor who wants to litigate that ground." Id. Here, the movants wish to advance the argument that the IRS may not enforce the electioneering restrictions of § 501(c)(3) against churches and religious organizations, an argument that the original party, the IRS, does not intend to advance and which, if successful, would confer a tangible benefit on the movants.

The Foundation points out that the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a), generally forbids courts from entertaining suits to prevent the IRS from enforcing the Tax Code, and that therefore the movants could not commence a separate action against the IRS to obtain a ruling that they may engage in political campaigning without jeopardizing their tax-exempt status. The Foundation contends that the movants should not be permitted to use intervention to obtain relief that would otherwise be barred by § 7421(a). But the movants are not intervening for the purpose of obtaining relief against the IRS; they

4

are intervening for the purpose of preventing the Foundation from obtaining relief against the IRS that would be inconsistent with their argument that the IRS may not enforce the electioneering restrictions of § 501(c)(3) against them. Even if the movants are successful in showing in this action that they have a legal right to both participate in political campaigns and keep their tax-exempt status, they would not obtain any relief against the IRS. Indeed, the movants propose to intervene as defendants—on the side of the IRS—and have not indicated that they would bring a cross-claim against the IRS. Really what the movants seek is not to establish their right to engage in political activity while maintaining their tax-exempt status, but to prevent the Foundation from obtaining relief that would be inconsistent with, and therefore impair or impede, their later establishing that right. Thus, allowing the movants to intervene would not implicate the Tax Anti-Injunction Act.

      To have a right to intervene, the movants must show not only that the disposition of the suit could impair or impede their interests, but also that the existing parties will not adequately represent their interests. See Fed. R. Civ. P. 24(a)(2). In the present case, the IRS will adequately represent the movants' interests to some extent. Like the movants, the IRS wishes to prevent the Foundation from obtaining an order requiring it to enforce § 501(c)(3)'s electioneering restrictions against churches and religious organizations. But the IRS's defense is that it does not have a policy against enforcing those restrictions against churches and religious organizations in the first place. The IRS does not intend to argue that, if it is determined that it has such a non-enforcement policy, the policy is justified or compelled by the Establishment Clause and other laws. Thus, the IRS does not fully represent the movants' interests. However, unless the Foundation is able to prove

that the IRS has a policy of not enforcing the electioneering restrictions against churches and religious organizations, the movants will have no occasion to advance their legal arguments. As discussed, the movants do not (and because of the Tax Anti-Injunction Act probably cannot) assert a cross-claim against the IRS. So if the IRS succeeds in showing that it does not have a policy against enforcing § 501(c)(3)'s electioneering restrictions against churches and religious organizations, the case will be over and the movants will have nothing to do. Still, this does not mean that the movants cannot intervene now and wait on the sidelines in case there comes a time in the suit when their legal interests require protection.

      A final requirement for intervention is that the motion to intervene be timely, and the Foundation contends that the present motion is untimely. However, the Foundation has not pointed to any prejudice caused by the timing of the motion, and I cannot detect any. The primary issue in this case is the factual one of whether the IRS has a policy of not enforcing the electioneering restrictions of § 501(c)(3) against churches and religious organizations. As noted, only if this issue is resolved in favor of the Foundation will the movants have any need to present their legal arguments. The earliest time to present those arguments would be summary judgment, and motions for summary judgment are not due until April 1, 2014. The movants have not indicated that they wish to take any discovery, and because the issues they seek to litigate are pure legal issues, it is hard to envision them having a need to take discovery. Here, the motion to intervene was filed on December 12, 2013, well in advance of the summary-judgment deadline, and in the context of this case that was early enough to render the motion timely.

Accordingly, the motion to intervene is **GRANTED**.

Dated at Milwaukee, Wisconsin this 3rd day of February, 2014.

                                                  s/ Lynn Adelman

                                                _____
                                                LYNN ADELMAN
                                                District Judge